IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENNEY B. SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 10 C 5316 |
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kenney B. Smith has sued his former employer, Northwestern Memorial Hospital, under Title VII of the Civil Rights Act of 1964. He asserts claims of retaliation and race- and age-based discrimination. Northwestern has moved to dismiss Smith's complaint. For the reasons stated below, the Court grants Northwestern's motion.

## Background

Smith is an African American and an Illinois resident. Compl. ¶ 3. Northwestern is a non-profit Illinois corporation with its principal place of business in Chicago, Illinois. *Id.* ¶ 5. The factual allegations underlying Smith's claims are contained in three administrative complaints Smith filed with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR) in 2005. *See* Compl., Exs. A-C.

Smith filed his first administrative charge against Northwestern on July 28, 2005. *See id.*, Ex. A. He alleged that his supervisor at Northwestern, Michael Manka, denied

him a promotion from senior radiographer to resource coordinator. *Id.* at 1. Manka told Smith that he chose to promote Raul Sanchez, a younger, non-African American employee, because he felt that Sanchez would excel in the position. *Id.* According to Smith, Sanchez was "substantially less qualified" for the position than Smith in light of Sanchez's work attendance and performance. *Id.* at 2. Smith also alleged that Manka denied the promotion to Smith because approximately one month earlier, Smith had complained to Manka that Sanchez was sexually harassing an unnamed Northwestern employee. *Id.*

On September 6, 2005, Smith filed a second administrative charge. *See id.*, Ex. B. He alleged that Manka gave him a negative performance evaluation on August 24, 2005 and placed him on indefinite suspension on September 2, 2005. *Id.* at 2-3. According to Smith, the negative evaluation was "based on false information" and ignored the fact that Smith's job performance was "comparable to a similarly situated employee, Raul Sanchez (20's, non-black)." *Id.* Smith also asserted that Manka's alleged actions were in retaliation for Smith's first charge against Northwestern.

Smith filed a third administrative charge on September 27, 2005. *See id.*, Ex. C. He alleged that on September 23, 2005, Manka discharged him from his position at Northwestern. *Id.* at 2. Although the discharge was purportedly based upon Smith's misuse of confidential information, Smith asserted that the true reasons were his race, his age, and his previous administrative charges. *Id.*

In 2006, Smith filed documents with the IDHR and the EEOC withdrawing certain of his claims. Specifically, Smith requested that the IDHR and EEOC not make findings

on the portions of his charge relating to the following claims: "Failure to promote, in retaliation for opposing unlawful discrimination; poor performance evaluation, indefinite suspension, and discharge in retaliation for opposing sexual harassment." Def.'s Mem., Ex. F. The IDHR granted Smith's request and "administratively closed" these claims on July 19, 2006. *Id.* The EEOC issued a right-to-sue letter to Smith for his remaining claims on May 17, 2010. *See* Compl., Ex. D. Smith filed his complaint on August 23, 2010.

## Discussion

In addressing Northwestern's motion to dismiss, the Court accepts Smith's allegations as true and draws reasonable inferences in his favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010); *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003). The Federal Rules of Civil Procedure require Smith to provide "a short and plain statement" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though his complaint need not contain "detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, Smith must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint fails to state a plausible claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

**1.    Timeliness**

Northwestern first argues that Smith's complaint must be dismissed in its entirety because Smith filed the complaint ninety-six days after an employee of his attorney, L.

Steven Platt, received the EEOC's right-to-sue letter.  *See* Def.'s Mem. at 2-4.  It is undisputed that Platt appeared on Smith's behalf as counsel during the EEOC / IDHR proceedings.

"A civil action alleging a Title VII violation must be filed within [ninety] days of receiving a right-to-sue notice from the EEOC."  *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 849-50 (7th Cir. 2001) (citing 42 U.S.C. § 2000e-5(f)(1)).  In the Seventh Circuit, the law is "unambiguous" that "'[t]he [ninety]-day period of limitations set forth in [section] 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue notice is actually received *either by the claimant or by the attorney representing him in the Title VII action*.'" *Id.* at 850 (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984)) (emphasis in original).  Receipt of the notice by the office of the claimant's attorney qualifies as receipt by the claimant himself.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93 (1990); *see also Ringgold v. Nat'l Maint. Corp.*, 796 F.2d 769, 770 (5th Cir. 1986) ("[T]he [ninety]-day period of limitation established by [section] 2000e-5(f)(1) begins to run on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant.").

    a.    **Date of receipt**

In his initial response brief, Smith argued that the right-to-sue letter was never actually served on Smith, Platt, or Platt's agent.  *See generally* Pl.'s Resp. at 4-14.  After Northwestern filed its first reply brief, the Court held an evidentiary hearing to aid in resolving the parties' dispute over whether Platt received the right-to-sue letter.  *See Jones*, 744 F.2d 1309, 1314 (7th Cir. 1984) (when the parties dispute whether the

plaintiff's attorney received the right-to-sue letter, "there must be an evidentiary hearing to inquire into the specific circumstances of the case.").

At the hearing, the Court heard testimony from two defense witnesses. The first witness was John J. Toomey, a partner at Arnold and Kadjan, the law firm at which Platt worked at times relevant to this decision.[1] Hr'g Tr. 8:10-15, May 13, 2011. He stated that the law firm had authorized a receptionist, Tanisha Donald, to receive its mail, including items that required a signature. *Id.* 9:3-10, 10:25-11:7. Toomey provided the Court with documents containing Donald's signature, including W-4 forms and an employment application. *See id.* 11:21-24.

The second witness was Jenling R. Norman. Norman testified that she was employed as Arnold and Kadjan's office manager and bookkeeper and that her responsibilities included supervising the law firm's clerical staff. *Id.* 24:14-20. She also stated that Donald was authorized to sign for certified mail on behalf of the law firm. *Id.* 26:21-24. Postal Service records reflect that "T. Donald" signed for the right-to-sue letter on May 19, 2010.

After hearing these witnesses' testimony and reviewing multiple examples of Donald's handwriting and the signature on the certified mail receipt for the right-to-sue letter, the Court concluded that Donald signed the receipt. *See id.* 30:2-18. On this basis, the Court also found that Smith filed his lawsuit outside the ninety-day limitation period, which expired on August 16, 2010. *Id.* 31:13-19 ("It was Ms. Donald who signed for it. She was an agent of the law firm because she was expressly conferred the

---

[1] By the time of the hearing, Platt (who continues to represent Smith) was employed by a different law firm.

authority to do that, and so it was there.  So the lawsuit was filed a few days after the [expiration of the ninety-day period].").  Subsequently, on July 8, 2011, the parties stipulated that Donald, acting as Platt's agent, "received and signed for" the right-to-sue letter on May 19, 2010.  Stipulation ¶ 2.

Based on the evidence presented at the May 13, 2011 evidentiary hearing and the undisputed facts regarding the receipt of the right-to-sue letter, the Court again concludes that Smith's lawsuit was filed ninety-six days after his attorney received the right-to-sue letter.  Therefore, because Smith failed to file the complaint prior to the expiration of section 2000e-5(f)(1)'s ninety-day limitations period, the complaint is untimely.

### b. Equitable tolling

In two supplemental briefs filed after the May 13, 2011 evidentiary hearing, Smith contends that the doctrine of equitable tolling applies and excuses his untimely filing of his complaint.  See generally Pl.'s Supp. Mem. at 2-12; Pl.'s Surreply Mem. at 3-11.  Northwestern, by contrast, argues in its supplemental briefs that equitable tolling is not justified because Smith's failure to timely file his complaint resulted from a "garden variety" mistake by his attorney.  Def.'s Supp. Mem. at 1; see also generally Def.'s Supp. Reply Mem. at 1-3.

The ninety-day limitations period for filing a Title VII claim with the EEOC is a non-jurisdictional requirement that is subject to equitable tolling.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Threadgill*, 269 F.3d at 850-51.  Tolling "is reserved for situations in which the claimant 'has made a good faith error (*e.g.*, brought

suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Id.* at 850 (quoting *Jones*, 744 F.2d at 1314). Although "serious instances of attorney misconduct" can warrant equitable tolling of a limitations period, simple negligence by an attorney or his staff is generally insufficient to warrant tolling. *Holland v. Florida*, 130 S. Ct. 2549, 2564 (2010).

As noted above, the parties' July 8, 2011 stipulation states that Platt's authorized agent received the right-to-sue letter on May 19, 2010. Stipulation ¶ 2. The parties also agree that clerical employees of Arnold and Kadjan maintain a general practice of forwarding all incoming mail to a docketing clerk to ensure that deadlines are entered into the law firm's diary and communicated to the appropriate attorney. *Id.* ¶ 3. Despite this, the law firm's diary and the diaries of Platt and his secretary contain no record of the right-to-sue notice, and Platt himself was unaware of the letter until he requested a copy of it from the EEOC on August 23, 2010. *Id.* ¶¶ 4-5. In short, it is effectively undisputed that the delay in filing Smith's lawsuit resulted from a clerical error that occurred at some stage of the law firm's process for handling incoming mail.

In light of the parties' stipulations and the evidence and arguments presented at the May 13, 2011 hearing and in the parties' numerous briefs, the Court concludes that equitable tolling is not warranted in this case. The undisputed facts reveal that Smith failed to timely file his complaint due to a single, apparently inadvertent filing mistake by Platt or his law firm's staff. The case law is clear that "'a garden variety claim of excusable neglect'" by the plaintiff's attorney is insufficient to trigger equitable tolling. *Holland*, 130 S. Ct. at 2564 (quoting *Irwin*, 498 U.S. at 96). As the Supreme Court has

noted, to permit tolling based upon simple, excusable attorney errors such as those in this case "would essentially equitably toll limitations periods for every person whose attorney missed a deadline." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (declining to apply tolling where attorney miscalculated the relevant limitations period); *see also Irwin*, 498 U.S. at 458 (attorney's failure to act due to absence from office did not warrant tolling). The Fourth Circuit made a similar point in *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222 (4th Cir. 2005), when it rejected a plaintiff's argument that tolling was justified based on her attorney's negligence. As the court stated,

> [t]he law has always, and necessarily, held people responsible for innocent mistakes. The tort system, for example, is premised on penalizing innocent yet negligent mistakes. Many attorney mistakes are innocent in that they involve oversights or miscalculations attributable in some part to the sheer press of business. To accept such mistakes as a ground for equitable tolling, however, would over time consign filing deadlines and limitations periods to advisory status. The ensuing confusion would contradict our prior observation that equitable tolling requires an extraordinary circumstance beyond [the plaintiff's] control that prevented him from complying with the statutory time limit.

*Id.* at 227 (internal quotation marks omitted).

Nor does tolling apply simply because Platt's staff, as opposed to Platt himself, may have caused the error. For example, in *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237 (5th Cir. 2010), the Fifth Circuit concluded that a clerical error by an attorney's staff member did not warrant equitable tolling. *Id.* at 239-40. In *Harris*, a paralegal made an error in calculating a limitations period and consequently entered an incorrect filing deadline on the calendar of Harris's attorney. *Id.* at 238. The court, after noting that tolling is warranted only in "rare and exceptional circumstances," rejected Harris's argument, reasoning that "[i]f Harris herself had mismarked the days on her calendar, a

-8-

court would not be obliged to equitably toll the ninety-day filing deadline. *Merely because the negligence was on the part of her attorney and his staff does not entitle Harris to equitable tolling—a party is bound by the acts of her lawyer.*" *Id.* at 239-40 (internal quotation marks omitted) (emphasis added). Because the error was "another garden variety act of attorney negligence," equitable tolling did not apply. *Id.* at 240. In other words, an error by an attorney's staff, though unfortunate, is no more appropriate a basis for equitable tolling than an error by the attorney himself.

To be sure, the Supreme Court recently made clear that there is no *per se* rule against tolling based upon attorney negligence or misconduct. *See Holland*, 130 S. Ct. at 2565. At the same time, however, *Holland* reaffirmed that "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied." *Id.* at 2564. In a recent post-*Holland* decision, the Seventh Circuit noted that although "a lawyers 'egregious behavior'" can warrant tolling, "neither a 'garden variety claim of excusable neglect' nor a 'miscalculation' about the time available for filing is an 'extraordinary' circumstance." *Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010) (quoting *Holland*, 130 S. Ct. at 2552-53). The court in *Griffith* declined to hold that the relevant limitations period was tolled in light of the plaintiff's assertion that his lawyer's illness resulted in the delayed filing of his habeas corpus petition. *Id.* The court also refused to apply tolling due to the attorney's possible misinterpretation of a statute. *See id.* (*"Holland* tells us that a simple legal mistake does not excuse an untimely filing.").

Smith presents no allegations or evidence suggesting that he was prevented from timely filing his complaint for any reason other than mere excusable neglect on the

part of Platt and/or his staff. He argues that Platt's "illness and incapacity support the application of equitable tolling in this case," Pl.'s Supp. Mem. at 10, but the parties agreed in their July 18, 2011 stipulation that Platt's medical problems "played no role in the failure of" Platt and/or his staff to act upon the right-to-sue letter. Stipulation ¶ 6. At its core, Smith's argument is simply that the letter "never made its way into the Arnold and Kadjan docketing system," and therefore "Platt never saw it until requesting it again from the EEOC on August 23, 2010." Pl.'s Supp. Reply Mem. at 3. For the reasons discussed above, this sort of error is not an extraordinary circumstance that warrants equitable tolling of the limitations period in section 2000e-5(f)(1).

## 2.  Exhaustion

Finally, Northwestern contends that Smith's retaliation claims must be dismissed because he failed to exhaust his administrative remedies for these claims. Def's Mem. at 4-5. Smith counters that he satisfied Title VII's exhaustion requirement and even if he did not, his failure to have done so is subject to equitable remedies such as tolling. Pl.'s Resp. at 14-15.

It is well settled that "in a state like Illinois, which provides an administrative remedy for employment discrimination, a plaintiff must give the state agency an opportunity to conciliate the employment dispute before pursuing federal remedies." *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999). Smith, however, did not file his complaint in a timely fashion and therefore is not entitled to equitable tolling of section 2000e-5(f)(1)'s ninety-day limitations period. Because Smith's complaint would be subject to dismissal even if he had adequately exhausted his remedies before the EEOC and the IDHR, the Court need not reach the issue of

exhaustion.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 11] and dismisses this action with prejudice. The Clerk is directed to enter judgment in favor of defendant and against plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 17, 2011